CARMEN M. GIL, Petitioner and Appellee, v. CARLOS E. CHARDÓN, Commissioner of Agriculture and Labor, Respondent and Appellant.

No. 4945.   Argued December 18, 1929.—Decided June 25, 1930.

*James R. Beverley, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellant.   *Juan B. Soto* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Carmen M. Gil filed in the district court a petition for a writ of mandamus in which she prayed that the Commissioner of Agriculture and Labor be commanded to reinstate her in her position as secretary and chief clerk of the Bureau of Agricultural Development in his department.

The grounds for the relief sought are set forth in the petition, thus:

"2. That the petitioner was in January, 1924, and has been continuously ever since, in the Classified Civil Service of Puerto Rico, having passed the proper examination and having been included in the list of eligibles in said Service.

"3. That in July, 1924, the Commissioner of Agriculture and Labor of Puerto Rico appointed the petitioner as secretary and chief clerk of the Bureau of Agricultural Development in the said department at a salary of $2,000.

"4. That the position of secretary and chief clerk of the Bureau of Agricultural Development in the said department existed at the time of the appointment of the petitioner to the said position and

still exists as one of the public positions that must be filled by eligible persons within the Classified Civil Service.

"5. That on September 25, 1928, the respondent wrote a letter to the petitioner asking her to resign her position as secretary and chief clerk of the Bureau of Agricultural Development, referred to in the preceding paragraph of this petition, within the next 48 hours, and forbade her to return to her office during that time.

"6. That on September 29, 1928, the respondent wrote a letter to the petitioner suspending her from duty and pay, said suspension to be effective from the 25th of the same month. There was attached to that letter a copy of another letter, which, according to the respondent, had been addressed to him by Ignacio L. Torres, Assistant Director of the Bureau of Agricultural Development. The said letters, literally copied, read as follows:

" 'Sept. 29, 1928.—Miss Carmen M. Gil, San Juan, P. R.—Dear Madam: I enclose herewith copy of a letter dated July 20, which I have received from Mr. Ignacio L. Torres, Assistant Director of the Bureau of Agricultural Development, and which is self-explanatory. The said letter remained in my office without my taking any action thereon in view of your promise to me that you would resign at the end of a vacation granted you, which expired on September 25..

" 'Mr. Torres charges you in that letter with insubordination,. which carries with it your removal as an employee of the Department of Agriculture and Labor.

" 'Therefore, you are granted until Wednesday, October 3, at ten o'clock in the morning, to answer the charges brought by Mr. Torres in his letter, and you are hereby suspended from duty and pay as from September 25, 1928, when your vacation expired. I warn you that in case no answer is received before the said date and hour I shall deem the above charges to have been admitted by you, and you will be forthwith removed from your employment. Respectfully, (signed) Carlos E. Chardón, Commissioner.'

" 'July 20, 1928. Hon. Carlos E. Chardón, Commissioner of Agriculture and Labor, San Juan, P. R.—Sir: On the 16th instant, when revising the weekly reports submitted by the various employees of the Bureau of Agricultural Development, I noticed with surprise that the report of Emilio Muñoz, an agricultural agent, was not included among those received. I sought for an explanation from Miss C. M. Gil, whose duties as secretary and chief clerk of the Bureau of Agricultural Development included the receipt, classification and filing of the said reports, and whom I had expressly directed to attend to this work some days before.

" 'Thereupon Miss Gil, in an outburst of rage and in an intemperate voice, addressed me in the following or similar words:

" 'You are a forgetful person (*desmemoriado*); I have told you before that the report from Mr. Emilio Muñoz has not arrived.' With the idea of preserving harmony and order in the office, I did not take notice of the intemperate answer of Miss Gil, and called her attention to the fact that Agent Muñoz had been in the office four or five days during the previous week and that she might well have asked him for the report on that occasion. Miss Gil, without abating her aggressive demeanor and using words not fit for the occasion, criticized me sharply and threw the blame on me as the person upon whom it was incumbent to receive such reports, and stated that she had performed her duty by informing me that the said report from Mr. Muñoz had not arrived. I desire to state that Miss Gil failed to ask Mr. Muñoz for the report in question, as she was ordered to do.

" 'Being unable any longer to put up with the disagreeable situation in which I was being placed by Miss Gil, I courteously reprimanded her and told her to use the proper manners and words in addressing her superior. She answered me by threatening to complain to the Commissioner if I did not withdraw my reprimand and, upon my failure to do so, she went to you to complain, and this compelled me not to trust her any longer.

" 'Afterwards, you may remember, I spoke to you personally in regard to this matter, and we waited until Miss Gil should have an opportunity for finding a position in another department or for resigning, since she could no longer work under me because of her open insubordination and her disrespectful attitude towards me.

" 'Therefore, I submit the case to your consideration and respectfully ask of you to hold Miss Gil accountable for her action, since the efficiency of this office is seriously affected by a lack of cordial relationship between the chief thereof and his subordinate, who acts as his secretary.

" 'Mr. Tomás Vera Ayala, Mr. Alfonso del Valle and Mr. Rafael López Capó are witnesses to the occurrence. Respectfully, (signed) Ignacio L. Torres, Assistant Director of Agriculture.'

"7. That on October 2, 1928, the answer of the petitioner to the charges of insubordination set forth in the said letters was delivered to the respondent, and a literal copy of the said answer is as follows:

" *       *       *       *       *       *       * "

(That answer is transcribed in full in the complaint. It

is lengthy and detailed and, in short, admits the facts but denies that the same occurred in the manner described by Mr. Torres. A recital of the petitioner's version of the occurrence was included.)

"8. That on October 8, 1928, the petitioner sent by registered mail to the respondent a letter, which was received by him on the same day and in which she requested the respondent to set a day and time for the establishment of the charges above referred to and to hold the proper hearing; and that the petitioner be notified of such setting.

"9. That, instead of granting the said request for an inquiry and the setting of a day for the proper hearing, the respondent, on the day following that in which the petitioner made her request, wrote and addressed a letter to the petitioner removing her from her position as secretary and chief clerk of the Bureau of Agricultural Development in the Department of Agriculture and Labor as of September 25, 1928.

"10. That in a letter dated October 30, 1928, the respondent notified the petitioner that she was reinstated in her position as secretary and chief clerk of the Bureau of Agricultural Development, said reinstatement to be effective as of September 25 of the same year.

"11. That thereafter, to wit, on November 10, 1928, the respondent wrote the following letter to the petitioner herein:

" 'November 10, 1928.—Miss Carmen M. Gil, Secretary and Chief Clerk, Carretera Nueva, stop 14, Santurce, P. R.—Dear Madam: I wrote you on September 29, 1928, and enclosed with my letter a statement of the charges filed against you by Mr. Torres, Assistant Director of the Bureau of Agricultural Development of this Department. Subsequently, on October 2, I received your answer to the said charges and, after carefully considering said charges as well as your answer thereto, I decided to order your removal from the position you were filling in our department.

" 'In my letter of October 30 I informed you that, by reason of the unobservance of all the requirements of section 7 of the Regulations of the Civil Service Law of Puerto Rico in the proceedings relating to the charges filed against you, I reinstated you in your position as Secretary and Chief Clerk of the Bureau of Agricultural Development, such reinstatement to take effect from September 25 last. I acted in that way so as to give you every opportunity to which you may be entitled under the law. However, in order that the proper

procedure may be followed in this matter, you are hereby notified that beginning next Monday, the 12th instant, you will be suspended from duty and salary until the determination of the proceedings mentioned above. I enclose herewith another copy. of the charges filed by Mr. Torres.

" 'Accordingly, I will hold a hearing in my office at 10 a. m. on Wednesday, the 14th instant, at which you are hereby summoned to appear, so that you and Mr. Torres may submit any evidence that either of you may deem relevant. At the said hearing you shall be entitled to cross-examine the witnesses.—Respectfully, (signed) Carlos E. Chardón, Commissioner.'

"12. That, in accordance with the terms of the above letter, the respondent reproduced against the petitioner the same charges, under which the respondent first removed the petitioner from office and reinstated her afterwards.

"13. That the petitioner again answered the charges, by reproducing the letter which is transcribed in the seventh paragraph of the within petition.

"14. That a hearing duly took place at which the evidence for both sides was heard, and a transcript of such evidence is attached hereto.

"15. That on November 28, 1928, subsequent to the holding of the said hearing, the respondent removed the petitioner from office by reason of the same charges, of which the said petitioner had been previously exonerated.

"16. That at no time has the petitioner resigned from her afore said position, nor has she lost her status within the Classified Civil Service of Puerto Rico."

An alternative writ of mandamus having been issued, the respondent answered and admitted each and every one of the allegations set out in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, and 20 of the said petition. He admitted in part the allegations in paragraphs 15, 17 and 18, and averred in his turn what he deemed relevant in regard to those allegations.

As new matter of opposition to the petition, he alleged certain facts which we do not think it necessary to transcribe here. By way of separate and distinct special defenses he set up the following:

"1. That the proceedings for removing a public officer or employee are of an administrative, and not a penal, character and therefore, the defense of former jeopardy is not applicable in such cases.

"2. That the petition in mandamus herein does not state facts sufficient to constitute a cause for relief in favor of the petitioner.

"3. That mandamus is not an adequate or proper remedy for the review of an order removing a public officer where, as in the present case, it appears that all the requirements of the law have been complied with and there is legal cause for such removal.

"4. That mandamus does not lie for the purpose of determining whether or not the removal of the petitioner was necessary for the proper working and efficiency of the public service, as this involves the exercise of discretion in a matter, the decision of which rests exclusively with the defendant."

The case was taken under advisement by the district court, which finally decided it in favor of the petitioner. After reciting the facts, that court said in its statement of the case and opinion:

"According to Rule VII of the Civil Service Rules, promulgated by the Governor of Puerto Rico, 'no person shall be removed from a position in the classified service except for such cause as will promote the efficiency of the service, and for reasons given in writing.' A similar provision is found in paragraph (c), subdivision 2, section 5 of the Civil Service Act.

"An employee included in the Classified Civil Service can not be removed lawfully except for cause and for the good of the public service. Castro v. Gallardo, 34 P.R.R. 194.

"Subdivision 5 of Rule V enumerates the causes which are considered as sufficient for removal from the service, thus:

" '(a) Delinquency or misconduct;

" '(b) Physical or mental unfitness;

" '(c) Criminal, dishonest, immoral, or notoriously disgraceful conduct;

" '(d) Intentionally making a false statement in any material fact, or practicing any deception or fraud in securing examination, registration, certification, or appointment;

" '(e) Refusal to furnish testimony as required by the Civil Service Act; and

" '(f) The habitual use of intoxicating beverages to an excess.'

"From a consideration of the charges filed against the petitioner,

we find that none of them can be identified with any one of the causes specified in Rule V, if careful consideration is given to what happened between the petitioner and her immediate superior, as appears from the statement of the charges and the answer thereto, both parties having submitted their case on the pleadings. Perhaps the words used by the petitioner in addressing her chief, calling him a forgetful person (*desmemoriado*), and her failure to ask the agricultural agent Emilio Muñoz for his report, when it was the duty of said Emilio Muñoz himself to file the said report, might constitute a fault meriting a reprimand, but never a sufficient cause for removal in furtherance of the efficiency of the service, especially when it is borne in mind that such a removal would have the effect of disqualifying the employee for reinstatement in the said service.

"Of course, it is not the purpose of the court to consider the evidence introduced by both sides at the hearing of the charges or to pass upon its sufficiency, since such evidence has not been submitted to us and that would not be our province; but simply to determine whether the charges filed constitute just cause for removal. In our opinion they do not, in view of the letter and the spirit of the law.

"Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed or suspended. 38 C. J. 709–710; Ex rel. Moyer v. Baldwin, 19 L.R.A. (N.S.) 49.

"As to the claim that the reinstatement sought by the petitioner would constitute a new appointment, we do not consider it so, because no re-appointment was issued to her, but she was merely reinstated in her position so as to give her an opportunity to be heard, since she had been removed without a previous hearing and an opportunity to make her defense."

Thereupon the Commissioner took the present appeal. His brief has been carefully prepared in the office of the Attorney General of Puerto Rico.

What has made us hesitate the most in our decision is whether, in view of the fact that the petitioner was finally granted a hearing at which evidence was introduced which is not before us, we, as a court, are justified in reviewing the conclusion reached by a head of department as to the interest of the public service, of which he has general charge.

The modern tendency—a most just one—and the spirit of the law which created the Civil Service seek to insure

efficiency in the public service by organizing and maintaining a competent, industrious and honest corps of employees, who are shielded from political change, caprice or passion and from wilfulness, despotism, or selfishness on the part of their chiefs; whose tenure of office will depend on themselves, on their own conduct in the performance of their official duties. To do his duty—such the standard for the employee. If he fulfills his duty, he may consider himself secure in his position under the protection of the law, and if unjustly removed therefrom, he will be reinstated by the courts of justice.

After careful consideration, we think that a citation made by the appellant himself in his brief shows us the way to be followed in the present case. That citation says:

"Mandamus is a proper remedy to prevent an officer or board from removing an officer from his office without authority, or where there is a manifest abuse of discretion." 38 C.J. 704.

The authority of the Commissioner to remove in proper cases can not be questioned. That the procedure followed was in accordance with the rules laid down by the jurisprudence and the proper practice can not be disputed either. The petitioner was given an opportunity to be heard in her own defense, after charges in writing had been filed against her. Under those circumstances, it is only by reason of a manifest abuse of discretion on the part of the Commissioner that a court might intervene, since it must be admitted that no one is in a better position than he for deciding whether or not the removal of an employee working under him would promote the efficiency of the public service, for which he is mainly responsible.

All depends, therefore, upon the question of whether or not the Commissioner abused the discretion vested in him.

The circumstances here are such as to show, in our opinion, that the said abuse existed. The attitude of the petitioner towards her immediate superior can not be considered

as a proper one. She ought never to have answered him in the manner she did; but that attitude does not justify her removal. Such was the impression made on us at the hearing of the appeal, and this impression has continued after a closer consideration of the case by us.

A house divided against itself can not stand. Differences between the chiefs and their subordinates are harmful to the public service, and if they grow to a point where they become a real division, they will ultimately ruin that service. But to support unconditionally the stronger side, the one vested with the greater authority in the house, at the first slight conflict; to impose the extreme penalty of dismissal from the official home for a fault that could be explained and that did not show any wicked intention, constitutes a greater evil than that apparently sought to be avoided. Before resorting to a removal, all the means, counseled by a knowledge of human nature, required by a proper recognition of personal dignity and sanctioned by the law, ought to be utilized. At times, after a realization of the fault committed and of the generous attitude of the person on whom it was incumbent to correct it, a better state of mind is created for the right performance of the duties, to the benefit of the public service.

Admitting that the petitioner forgot to ask for the report and acted in the manner stated by Mr. Torres in his letter, we consider her action to have been reprehensible, but not sufficiently serious to justify her removal.

By virtue of all the foregoing, the judgment appealed from must be affirmed.